J. T. MEDLIN AND WIFE v. MARY BUFORD et al.

*Action to Foreclose Mortgage—Valid Mortgage—Forged Note—Fraud of Mortgagor's Agent—Rights of Mortgagee.*

1. Where, in the trial of an action to foreclose a mortgage, it appeared that plaintiffs' attorney with whom defendant's agent negotiated a loan to be secured by mortgage on defendant's property, examined the title, prepared the note and mortgage, and directed that the latter should be executed and acknowledged before a reputable and honest probate officer, which was done ; and it also appeared that the note was forged and that the defendant was induced to sign the mortgage by the fraudulent representation of her agent ; and that the defendant received no part of the money ; and it further appeared that plaintiffs' attorney suspected defendant's agent, with whom he was dealing, to be a forger; *Held*, that the plaintiffs' attorney exercised all due diligence and prudence in the transaction, and the trial Judge properly directed the jury to find that the plaintiffs made the loan without notice or knowledge of the fraud practiced on defendant by her agent.

2. A mortgage, if duly executed to secure a loan made by the mortgagee, can be foreclosed, although the note mentioned in the mortgage be forged.

This was an action brought by the plaintiffs to foreclose a mortgage executed by the defendants to the *feme* plaintiff Sallie Medlin and tried upon certain issues at the April Term, A. D. 1895, of NEW HANOVER Superior Court, before *Hoke, Judge.* The following are the issues :

"First. Did the defendant, Mary E. McGirt, execute the note described in the complaint ?

"Second. Were the defendants induced to execute the mortgage by the false and fraudulent representations of John C. Davis?

"Third. Did the defendants or any one of them receive

any of the money at all received by John C. Davis from the plaintiffs' attorney, Cutlar, for the note and mortgage sued on?

"Fourth. Did plaintiffs advance the $1,000 to John C. Davis on the mortgage as a present cash loan and on the terms and conditions specified in the mortgage?

"Fifth. Was said loan so made without notice or knowledge of the fraud practised on the defendants by John C. Davis?"

It was agreed that the first and third issues should be answered "no," and the second and fourth should be answered "yes."

Mr: DuBrutz Cutlar, a witness for the plaintiffs, testified as follows:

"The note in controversy is in my handwriting, the amount of the note is one thousand dollars and it purports to be signed by M. E. McGirt, one of the defendants. The mortgage is of same date, August 12th, 1891. The mortgage is signed and acknowledged by all the parties before the clerk and registered on August 13th, 1891. Only Mrs. McGirt was required to sign the note. All the defendants signed the mortgage because they were interested in the land. John C. Davis applied to borrow this $1,000 for Mrs. McGirt. I examined the title and required the execution of this mortgage. I found the title good and gave him the $1,000 in cash on the note and mortgage now presented. An insurance policy was also procured by Davis, as stipulated for, and handed to me as agreed upon. I had money to lend for the plaintiff, Mrs. Sallie Medlin, and the same was her money and she owns the claim. I have had much experience in comparison of handwritings and can form an opinion. I think the signature to the mortgage and note are by one and the same person. There is some little difference, one being larger than the other, but not

more than the usual difference.  I had nothing to do with Mrs. McGirt in the matter but dealt with Davis as her agent.  I had no idea of any fraud.  The signatures were the same and there was no reason why any fraud should be suspected.  I had not the slightest notice of any fraud. J. C. Davis was a man of the highest character at the time and I supposed it was all right.  I never thought anything about it until some months afterwards when J. C. Davis' character had been exposed and his transactions were being looked into.  I saw Mrs. McGirt about it just before bringing suit and she seemed to think that I should have known that J. C. Davis was a rascal and protected her.  I thought he was borrowing money for Mrs. McGirt for a proper purpose.  Mrs. Medlin, the plaintiff and owner, was not here at the time and knew nothing of it.  The matter was conducted entirely by me."

On cross examination the witness said :

"In July, 1891, Mrs. Medlin put into my hands a mortgage for $1,000.00 purporting to be made by R. H. Smith to her, and at the same time a mortgage for collection was put into my hands purporting to be made by one Long to Mrs. E. T. Hancock, who is a sister to Mrs. Medlin plaintiff, and about the same time a mortgage was also given to me to collect purporting to be made by one George Hall to Mrs. M. E. Grafflin, the mother of the plaintiff, and at the same time a mortgage and note for $400.00 by J. R. Parker to M. E. Grafflin and one for $1,500.00 by R. Williams to E. T. Hancock.  I can't recollect that these mortgages were witnessed by John C. Davis, but they may have been. These mortgages and notes were all in my hands before the mortgage in this suit was executed.  I recall having a conversation with Mr. Junius Davis and saying I couldn't find any of these men in town, and couldn't find on the records any conveyances to them for the land which purported to

be in the city of Wilmington, and I said to Mr. Junius Davis that I suspected they were forgeries. I told the plaintiffs brother-in-law, Mr. R. H. Berry, that I believed the notes and mortgages were fictitious. I did not know it but told Mr. Berry I supposed them to be fictitious. Berry had the matter in charge for the plaintiff and her sister, Mrs. Hancock, and her mother Mrs. Grafflin, and placed these mortgages with me for them. This was all done before the execution of the note and mortgage in controversy in this action. I recollect the time I spoke to Mr. Junius Davis. He said he had three mortgages, which he, Mr. Davis, also suspected. The mortgages which I had, and that Mr. Junius Davis had, were all by single persons and not acknowledged but proved by John C. Davis as witness. I know this now, but I do not re-all that the last matter was mentioned in my talk with Mr. Junius Davis; the conversation was before the execution of the mortgage in controversy. I directed that the mortgage in controversy should be examined and acknowledged before Col. Taylor, the Clerk of the Superior Court, who is a conscientious man and does it well, and I am in the habit of having Col. Taylor do this. I was fond of John C. Davis and did not think he would put up a job on me. I had every confidence in him and did not think he would do me a wrong whatever he might do to other people. I did suspect him at the time as to the other mortgages, and spoke to Mr. Junius Davis about it in confidence. I collected the money on the Parker note and the others. The whole five were paid to me by John C. Davis. The money on the R. H. Smith mortgage was paid to me by John C. Davis on the day before the mortgage in controversy from the defendants was taken and was lent the following day to John C. Davis on the mortgage in controversy. I think it was the next day, certainly shortly afterwards. When I

called on Mrs. McGirt to collect the money she told me that she had never seen the note before nor had she executed it. I did not see Mrs. McGirt before the mortgage was taken but relied upon what John C. Davis had told me and the examination of the Clerk."

On re-direct examination the witness said :

"When the five mortgages were put in my hands I did not know any of the mortgagors and went to John C. Davis and told him I could not find any of the parties on the records and did not know them and could find no titles on the records. John C. Davis expressed surprise at this and said that the reason I did not know them was because they were all strangers here ; that they were laboring men he, John C. Davis, had brought down here to work on the Fifth Street Methodist Church ; that they were brought by him from Wilson and were then at work up the road. I supposed John C. Davis and the defendant, Mrs. McGirt, understood each other, and lent the money. I told John C. Davis in talking about the other mortgages that I would look to him to straighten them up, that it was then very unsatisfactory, that he had transacted the business and I looked to him to straighten it out. He was very plausible about it and said he would get it all straight very soon, and assumed to do it. He did do it and paid me $2,500, the amount due on those five mortgages. John C. Davis' reputation was then very good and this was the first matter that ever led me to suspect him. It was not long after this before he was exposed and his matters all came out. I suspected J. C. Davis, but was reassured by his statements. I told him I was uneasy and unhappy about it and suspected they were forged. After paying me the $2,500 John C. Davis applied to borrow this money for Mrs. McGirt on the mortgage in controversy and the other was lent out to parties suggested by John C. Davis."

MEDLIN *v.* BUFORD.

Thomas Evans, an attorney and expert accountant, examined the papers and testified that the note and mortgages were written by one and the same person—that they were the same signature.

Mrs. M. E. McGirt, one of the defendants, testified that she lives in Wilmington. Note and mortgage being shown to her she testified that she had seen both before; that she saw the note for the first time one year after it bears date; never saw it till Mr. Cutlar brought it to her house; never signed the note; the signature resembles hers; was struck at the resemblance. She did sign the mortgage. She never saw Mr. Cutlar till after or near the time suit was brought.

Mrs. Buford, one of the defendants, testified that she is the mother of Mrs. McGirt, and she was present when the mortgage was signed. "I and my daughter then signed the mortgage and there was only one paper signed. I first saw the note when Mr. Cutlar brought it to the house."

Mr. Junius Davis, a witness for the defendants, testified as follows:

"I knew John C. Davis prior to August, 1891. It was in the latter part of July, 1891, and before the execution of the mortgage in controversy that Mr. Cutlar mentioned to me that he had several mortgages for Mrs. Grafflin and her family. I don't recall how many mortgages Mr. Cutlar said he had. Mr. Cutlar said he could not find any of the parties who executed the mortgages anywhere in Wilmington and that he was very much worried about it. He showed me the papers and I called Mr. Cutlar's attention to the strong similarity between the signatures to the mortgages and John C. Davis' handwriting. Mr. Cutlar said either that he suspected that they were forged or that he believed that they were. I then procured three mortgages held by Mrs. Oakley, who was a client of mine to examine

them, suspecting that they were also wrong. I examined them and could not find the grantors anywhere in town nor the titles on the records. I also found that the property conveyed in the mortgages was all city property and was the property of other people. I told Mr. Cutlar about this and also that I could not find the parties in town and that my examination satisfied me that they were all forged. I discussed with Mr. Cutlar the fact also that all the mortgages I held and all that he, Mr. Cutlar, held were executed by men alone and that John C. Davis was the witness. I think that the mortgages held by me were examined by Mr. Cutlar. I am certain that I informed Mr. Cutlar about it. The mortgages were all forged as it turned out and admitted to be so by J. C. Davis. It was not at that time known positively.

The defendants then put in evidence Book Number 5 of the records of the Register of Deeds office of the county of New Hanover, which contained at pages 408 and 409 the mortgage of R. H. Smith to the plaintiff Sallie Medlin, referred to by plaintiff's witness, Mr. Cutlar, in his examination, which record showed that the said mortgage was satisfied and cancelled on the 13th day of August, 1891, the same day on which the mortgage in controversy was recorded.

The defendants in apt time and in writing asked the court to charge: "If the jury believe that Mr. Cutlar, the agent and attorney for the plaintiff, Sallie Medlin, for several weeks prior to the execution of the mortgage described in the complaint, had in his posession for collection five promissory notes and mortgages, all of which he had good reason to believe, and did suspect, were fictitious and had been forged by John C. Davis, that he knew these mortgages had been admitted to probate on the oath and examination of John C. Davis, who was the subscribing witness

to all of them, that he had told the brother-in-law of the plaintiff that he believed the notes and mortgages to be fictitious and told him to tell the plaintiff so, that he knew that Mr. Junius Davis had in his possession for collection several notes and mortgages which John C. Davis had given to Mrs. Oakley and which he had been told were forged and fictitious, that John C. Davis asked him, Cutlar, immediately upon the payment of the $1,000 if he would lend it out to him again, that Cutlar said he would, that John C. Davis brought the mortgage sued upon in this action to him soon after and got from him, Cutlar, the very identical money he, John C. Davis, had paid him a day or two before in settlement of the mortgage purporting to have been executed by R. H. Smith to the plaintiff, then Mr. Cutlar had notice of facts sufficient to put him upon inquiry and the plaintiff had notice of the fraud practiced by Davis upon the defendants and the jury must answer the fifth issue 'no.'" His Honor declined to give the instructions, to which the defendant excepted, and his Honor stated that there being no conflict of testimony, the facts being admitted as to the circumstances under which Mr. Cutlar advanced the money, and the precautions taken by him in the preparation of the note and mortgage, the delivery of them to John C. Davis with directions to have them executed before the clerk of the Court, and their return to him by Davis duly probated, and the other facts detailed by him was all the prudence he was required to exercise and made the question of notice one of law for the Court, and that he would take that issue from the jury and would answer it as a matter of law "yes," which he did, to which the defendants excepted.

There was judgment for the plaintiff on the verdict, and defendants appealed.

*Mr. J. D. Bellamy, Jr.*, for plaintiff.
*Messrs. Shepherd & Busbee*, for defendants (appellants).

MONTGOMERY, J.: If it be conceded (and it seems to appear clearly so from the testimony) that Cutlar knew, at the time of the execution of the mortgage by the defendants, that he was making a loan of money to Mrs. McGirt, one of the defendant mortgagors, through a person who, he believed, was the agent and attorney of the borrower and which agent he believed and suspected to be a forger of other mortgages and notes, yet upon the facts brought out in the evidence the plaintiff is entitled to have foreclosure of the mortgage for the satisfaction of her debt. It appears from the testimony, undisputed, that Cutlar, before he loaned the money for his client, the plaintiff, examined the title to the property conveyed in the mortgage, prepared the note and the mortgage, and delivered them to the person who appeared to be acting for the defendants, at the same time directing that the mortgage should be proved by the acknowledgement of the mortgagors themselves before the clerk of the Superior court of New Hanover, who as the testimony shows was a man of integrity of character and of business qualfications; and the mortgage was returned to him with the probate in proper form certified by that officer. This was a proper decree of prudence on the part of plaintiff's attorney to protect her interests and was all that was required of him, in law. His Honor therefore committed no error in his ruling, and in answering "no" as a matter of law, the fifth issue,—"was said loan so made without notice or knowledge of the fraud practiced on the defendants by John C. Davis?" (a person shortly afterwards declared to be insane by the proper authorities). The note was by the verdict of the jury found to be a forgery; but that cannot

help the defendants, as the mortgage can be foreclosed for the satisfaction of the plaintiff's debt notwithstanding such finding. This case was before us at the September term, 1894, and is reported in 115 N. C., 260. The principles of law applicable to the facts, which are about the same in both trials below, are fully discussed in that oppinon.

No Error.